OPINION OF THE COURT
Andrew V. Siracuse, J.
This case raises issues of first impression and reveals substantial and troubling inconsistencies in recent legislation regarding review of child support orders. Among the many changes contained in Laws of 1997 (ch 398) is a provision for one-time review by Child Support Enforcement Units of orders made prior to September 15, 1989. The sections authorizing this review are set out in Domestic Relations Law § 240 and Family Court Act § 413, and are functionally identical. The Domestic Relations Law section is as follows: “4. One-time adjustment of child support orders issued prior to September fifteenth, nineteen hundred eighty-nine. Any party to a child support order issued prior to September fifteenth, nineteen hundred eighty-nine on the behalf of a child in receipt of public assistance or child support services pursuant to section one hundred eleven-g of the social services law may request that the support collection unit undertake one review of the order for adjustment purposes pursuant to section one hundred eleven-h of the social services law. A hearing on the adjustment of such order shall be granted upon the objection of either party pursuant to the provisions of this section. An order shall be adjusted if as of the date of the support collection unit’s review of the correct amount of child support as calculated pursuant to the provisions of this section would deviate by at least ten percent from the child support ordered in the current order of support. Additionally, a new order shall be issued upon a showing that the current order of support does not provide for the health care needs of the child through insurance or otherwise. Eligibility of the child for medical assistance shall not relieve any obligation the parties otherwise have to provide for the health care needs of the child. The support collection unit’s review of a child support order shall be made on notice to all parties to the current support order. Nothing herein shall be deemed in any way to limit, restrict, expand or impair the rights of any party to file for a modification of a child support order as is otherwise provided by law.” (Domestic Relations Law § 240 [4].)
*533 This section limits access to this review to those who are either recipients of public assistance or those receiving support services through the enforcement units (Social Services Law § 111-g requires the provision of “services relating to the establishment of paternity and the establishment and enforcement of support obligations * * * to persons not receiving family assistance”).
In the present case a party to a divorce entered into before September 15, 1989 has received such a review, and did so only a few months after a similar application was denied by this court. Arlene Nettleton entered into a separation agreement in March of 1989, which set out child support obligations. That agreement was incorporated by reference but not merged into a decree of divorce signed on June 20, 1989; the decree further provided that it could not be modified except in Supreme Court.
Ms. Nettleton (hereinafter Ms. Jourdan) moved before this court to modify the support provisions of the agreement by order to show cause dated August 21, 1997. After numerous exchanges of papers and adjournments, the case came on to be heard and this court denied the motion in a letter decision dated February 2, 1998. The standard applied by the court was discussed in these two paragraphs from that letter:
“Ms. Jourdan has made much of the fact that the agreement predates the Child Support Standards Act and the support provided is less than the CSSA standard. She characterizes this level as inequitable and unfair. The Domestic Relations Law provides, however, that the child support standards it sets out are not to be considered a change in circumstances warranting modification of pre-CSSA agreements (Domestic Relations Law § 240 [1-b] [Z]). The correct standard is the general one for modification of agreements not merged in the decree: the movant must show ‘an unanticipated and unreasonable change in circumstances’ (Boden v Boden, 42 NY2d 210, 213) or that the financial needs of the child are not being met {Matter of Brescia v Fitts, 56 NY2d 132) * * *
“The court holds that Ms. Jourdán has failed to meet her burden. The Fourth Department has recently restated the rule: the party seeking to modify a separation agreement provision regarding child support must either show an unanticipated and unreasonable change in circumstances or ‘establish “that the combination of her own income and the payments contributed by [defendant] does not adequately meet the children’s needs” ’ {Demske v Demske, decided December 31, 1997, citing *534 Matter of Brescia v. Fitts, 56 NY2d 132, 140; see generally, Lawrence v. Lawrence, 227 AD2d 967).” This decision was not appealed.
This past fall, however, Ms. Jourdan applied to the Child Support Enforcement Unit (Unit) for a one-time review of the order. (Her counsel at the time of the order to show cause, Larry Baker, apparently did not participate in this application.) Without reference to the earlier decision, the Unit raised Mr. Nettleton’s support obligation. Following the process mentioned in Domestic Relations Law § 240 (4), Mr. Nettleton objected to this proposed order on grounds of res judicata and on the merits. Because the proposed order was filed in Family Court and the divorce decree grants Supreme Court sole jurisdiction in the matters of child support and modification of the agreement, Mr. Nettleton filed objections in both courts.
No mention was made by either party to this proceeding of any application to the Child Support Enforcement Unit other than the one for a review of the level of support. Counsel for the defendant, however, has since advised the court that Ms. Jourdan began receiving support via wage deduction through Albany in September 1998.
The court is at a loss to determine under what authority the Child Support Enforcement Unit acted in revising the support agreement between these parties. As noted above, neither Domestic Relations Law § 240 (4) nor Family Court Act § 413 (3) grants the right to a one-time review to persons not on public assistance or receiving support services under Social Services Law § 111-g. The wage deduction order payable under authority of Domestic Relations Law § 240 (2) (b) (2) and CPLR 5242 is distinguished in the statute from Social Services Law § 111-g services, and if this is all she was receiving Ms. Jourdan fell under neither category for whom the one-time review is available.
The computer-generated form used by the Child Support Enforcement Unit lists two statutory sections as authorization for the review, Family Court Act § 413 and Social Services Law § 111-h. (Peculiarly, the Domestic Relations Law is not mentioned.) Social Services Law § 111-h (12) does contain this language: “In any case where the child support order was issued prior to September fifteenth, nineteen hundred eighty-nine in which there is an assignment of support rights or in which a request for an adjustment review is made, the support collection unit shall initiate a one-time review of the order for adjustment purposes”. Taken in isolation, this subdivision *535 might be interpreted as allowing such action as was taken here. Such a reading, however, would render the limiting clauses of Domestic Relations Law § 240 (4) and Family Court Act § 413 (3) meaningless, and furthermore would vitiate the reference to those sections in subdivision (17) of Social Services Law § 111-h: “The department shall develop and disseminate a notice informing both parties to child support orders issued prior to September fifteenth, nineteen hundred eighty-nine, of the availability of the one-time adjustment of child support orders pursuant to the provisions of subdivision three of section four hundred thirteen of the family court act and subdivision four of section two hundred forty of the domestic relations law” (emphasis added). All these sections date from Laws of 1997 (ch 398). Since the proper interpretation of a statute is one that gives meaning to all of its sections, the only permissible reading of subdivision (12) is that it merely implements the authority granted in the Family Court Act and Domestic Relations Law. It cannot be read as allowing the Unit to review orders not referred to in those sections.
The court, on its own motion, would dismiss the proposed order on the ground that the Child Support Enforcement Unit was acting ultra vires in modifying an order not subject to its jurisdiction. Even had it been a valid exercise of the Unit’s powers, however, the defendant is correct in arguing that the doctrine of res judicata would prohibit the revision of the order at this time.
The Unit, in its papers, argues that its review involved different criteria than those at issue in the court proceeding. This is a misunderstanding of the section. Family Court Act § 413 (3) (a) and Domestic Relations Law § 240 (4) both state that the “order shall be adjusted if as of the date of the support collection unit’s review of the correct amount of child support as calculated pursuant to the provisions of this section would deviate by at least ten percent from the child support ordered in the current order of support” (emphasis added). It is clear that the criteria to be applied by the Unit are exactly those considered by the court, which are the comprehensive provisions of the Child Support Standards Act (CSSA). The Legislature provides no other standard for determining the appropriate level of support.*
Resolution of this case leaves several questions unanswered. Other than the one-time review, the statute permits adminis *536 trative reconsideration of orders only every 24 months. (This is a change from the 36-month cycle in the earlier law.) The statute thus limits the recipient to one application every two years, which both conserves the Unit’s resources and reduces the possibility of harassing a payor through repeated applications. Res judicata would arguably be available as a defense even were the plaintiff in receipt of support services until the two-year period from the prior order had expired.
The other troubling question is more speculative. In general, the services of the Child Support Enforcement Unit are available upon the recipient’s request. If Ms. Jourdan had elected to seek the Unit’s assistance for routine payment of support, would she then become entitled to the one-time and biennial reviews of support? (It is important to note that the periodic reviews are also limited to a “party to a child support order issued on behalf of a child in receipt of public assistance, or child support enforcement services pursuant to section one hundred eleven-g of the social services law” [Domestic Relations Law § 240-c (1); Family Ct Act § 413-a (1)].) To make a more extreme argument, does the very act of applying for a review qualify one as a person receiving “child support enforcement services pursuant to section one hundred eleven-g of the social services law”?
These questions must surely be answered in the negative. The Legislature, acting with the salutary goals of streamlining access to support review and securing an adequate level of support for the children of divorce, made a distinction between the rights of those receiving support services and those who were not. This line would be erased entirely were the options granted to one group be open to the other at either party’s option. Yet there appears to be nothing in the statute that would prohibit a recipient from applying for services one day and receiving a review the next. The distinction so carefully set out in every subdivision cited above would appear to be a nominal one only.
This is not merely a question of statutory interpretation. A separation agreement is a contract, and courts have limited power to change what parties have freely chosen to agree to. Modifications are permitted, under the standard referred to in the letter decision excerpted above. A wholesale rejection of the contract in the interest of regular administrative review, however, not only conflicts with the legislative distinction care *537 fully drawn throughout the new amendments, it conceivably violates article I, § 10 of the United States Constitution, which bars laws that impair the obligation of contracts.
The answers to these questions lie with the Legislature, not primarily with the courts. As far as the case before us is concerned, the objection is granted as a matter of law and the proposed order is declared void and unenforceable. The prior order of the court remains in effect. Ms. Parker may prepare an order to that effect, if necessary transferring and consolidating the Family Court proceeding with this one. In addition, she is entitled to $100 motion costs, disbursements as taxed by the clerk, and $350 in attorneys’ fees, to be paid by the County of Monroe.

 The statute also provides for a one-time cost-of-living adjustment (Domestic Relations Law § 240 [5]; Family Ct Act § 413 [4]), but upon objec *536 tion the court is to apply the CSSA (Domestic Relations Law § 240-c [3]; Family Ct Act § 413-a [3]).